United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 28, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-32733** |
| **WILLIAM H FORNEY, III,** | § | |
| | § | **CHAPTER 7** |
| **Debtor.** | § | |
| | § | |
| **WILLIAM H FORNEY, III,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 26-3045** |
| | § | |
| **FOX CAPITAL GROUP, INC,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

William Forney sued Fox Capital Group for refusing to release a judgment lien against Forney's Texas homestead prior to a sale scheduled for April 4, 2025. Forney and Fox cross-move for summary judgment. The motions for summary judgment are denied.

## BACKGROUND

On May 14, 2024, Fox Capital Group, Inc. sued Palace Social Hospitality, LLC and William H. Forney, III in the 157th District Court of Harris County, Texas. The state court entered a final judgment in Fox's favor on October 7, 2024. An abstract of that judgment was issued on January 3, 2025 and recorded in the Harris County real property records on January 16, 2025 under File No. RP-2025-18244.

At that time, Forney and his then-wife, Tobey Forney, owned a residence at 3774 Georgetown Street in Houston, Texas ("Homestead #1"), which they treated as their homestead. In early March 2025, the Forneys entered into a contract to sell Homestead #1. The closing was scheduled for April 4, 2025.

On March 14, 2025, Forney and Tobey Forney executed a Homestead Affidavit as Release of Judgment Lien. The affidavit was recorded in the Harris County real property records on March 19, 2025. On March 20, 2025, Forney recorded a Certificate of Mailing concerning

the Homestead Affidavit. Under Texas law, a homestead affidavit filed in compliance with § 52.0012 serves as a release of record of a judgment lien, subject to the statutory protections afforded purchasers and mortgagees and the judgment creditor's right to file a contradicting affidavit. TEX. PROP. CODE § 52.0012(c)–(e). A qualifying purchaser or mortgagee may rely on the affidavit during the 90-day period beginning on the 31st day after the certificate of mailing is filed, provided the creditor has not timely filed an opposing affidavit. *Id.* § 52.0012(d)–(e).

Forney's counsel contacted Fox's counsel on March 14 and requested a partial release of the Abstract of Judgment as to Homestead #1. The correspondence identified the April 4 closing date and included the sales contract, an amendment, the title commitment, and a proposed partial release that had been approved by Old Republic National Title Insurance Company. Fox did not file a controverting affidavit challenging the Homestead Affidavit.

The proposed April 4, 2025 Sale required delivery of a Title Policy to the Buyer. Old Republic was the proposed title insurer.

Old Republic informed Forney's counsel that its underwriting policy did not permit it to rely on a Homestead Affidavit to remove an abstract of judgment exceeding $50,000. Old Republic advised that it would accept the proposed partial release if Fox executed it. The record is disputed as to the extent of the communications between Fox and Forney's counsel after the March 14 request. Forney maintains that Fox did not respond to the request or the Homestead Affidavit, while Fox's billing records reflect telephone calls between counsel. Fox did not execute the proposed partial release before the scheduled closing.

The sale of Homestead #1 closed on April 4, 2025. Old Republic retained $231,526.40 from Forney's share of the proceeds pursuant to an escrow agreement. Forney was allocated $860,784.74 from the sale and received $629,258.34 at closing. The $629,258.34 was deposited into an Origin Bank account designated as the "William H. Forney, III Homestead Proceeds Account." The $231,526.40 remained with Old Republic.

On April 30, 2025, an agreed final decree of divorce was entered between William and Tobey Forney. The decree reflected their prior division of the proceeds from the sale of Homestead #1. The following day, Forney purchased a residence at 1028 Alexander Street in Houston ("Homestead #2"). Funds from the Homestead Proceeds Account were used toward the purchase. When Forney purchased Homestead #2 on

May 1, 2025, the $231,526.40 withheld from the sale of Homestead #1 remained in escrow with Old Republic.

Under Texas law, proceeds from the sale of a homestead are generally exempt from creditors' claims for six months following the sale. TEX. PROP. CODE § 41.001(c). The exemption may terminate earlier, however, when the owner acquires a replacement homestead without reinvesting the remaining proceeds. *See England v. FDIC (In re England)*, 975 F.2d 1168, 1174–75 (5th Cir. 1992). Forney had acquired a replacement residence but had not received the escrowed portion of the proceeds from his former homestead.

Forney filed a chapter 7 bankruptcy petition on May 16, 2025. In his bankruptcy schedules, he claimed Homestead #2 as exempt. He also claimed exemptions in the $17,914.43 remaining in the Homestead Proceeds Account and the $231,526.40 held by Old Republic. The Chapter 7 Trustee later objected to the claimed exemptions in those sale proceeds.

On May 22, 2025, Forney commenced a separate adversary proceeding against Fox and Old Republic, Adversary No. 25-03401 (the "Escrow Adversary"), seeking release of the $231,526.40 held by Old Republic. At a July 21, 2025 hearing, Fox and Old Republic agreed to a form of partial release of the Abstract of Judgment. Old Republic agreed to transfer the $231,526.40 in escrow to the Trustee, and Forney agreed to transfer the $17,914.43 remaining in his Homestead Proceeds Account to the Trustee. The Trustee agreed to hold the funds while preserving Forney's claimed exemptions. The Escrow Adversary Proceeding was dismissed with prejudice as to Old Republic and without prejudice as to Fox.

Forney and the Trustee later reached an agreement resolving the Trustee's exemption objection. Under the agreement, the Trustee retained $137,500.00 for administration by the bankruptcy estate and Forney retained $111,940.83. The Trustee also assigned to Forney any cause of action against Fox and authorized Forney to pursue those claims. Any recovery against Fox would be divided equally between Forney and the Trustee after deduction of specified attorneys' fees and costs. The compromise was filed on August 12, 2025 and approved by the Court on September 3, 2025.

On October 14, 2025, Fox filed an unsecured proof of claim based on the state-court judgment in the amount of $178,053.05 as of the petition date.

Forney filed this adversary proceeding on February 12, 2026. He asserts claims for slander of title, cloud on title, and conversion arising from the Abstract of Judgment, the refusal to honor his request for a release of the judgment lien, and the recovery of the escrow of $231,526.40 from the proceeds of the April 4 sale. The parties filed cross motions for summary judgment. The dispute centers on the consequences of Fox's failure to execute a partial release before the April 4, 2025 closing. Although the sale closed, Old Republic required $231,526.40 of Forney's share of the proceeds to be placed in escrow while the Abstract of Judgment remained of record. Fox did not file a controverting affidavit challenging the Forneys' homestead affidavit, but it also did not execute the proposed partial release before closing. The escrowed funds later became the subject of Forney's bankruptcy case, the Escrow Adversary Proceeding, and the Trustee's objection to Forney's claimed exemptions. Those matters ultimately resulted in the Trustee retaining $137,500.00, Forney retaining $111,940.83, and the Trustee assigning to Forney the estate's causes of action against Fox.

Forney's claims arise from the same basic contention: that Fox's failure to execute a partial release caused a portion of Forney's otherwise available sale proceeds to be placed in escrow. Forney seeks to recover the losses he attributes to that escrow, including the $137,500.00 ultimately retained by the Trustee and related damages. Fox disputes liability and maintains that it had no affirmative duty to execute a separate partial release. It alleges that Texas Property Code § 52.0012 provided a statutory mechanism for addressing the Abstract of Judgment and Fox did not controvert the Homestead Affidavit.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact means that evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party." *Gorman v. Verizon Wireless Tex.*, L.L.C., 753 F.3d 165, 170 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). It is the movant's burden to establish that no genuine issue of material fact exists. *Sossamon v. Lone Star State*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank*, 429 F.3d 556, 562 (5th Cir. 2005)). A party asserting that a fact cannot be or is not genuinely disputed must support that assertion by citing particular parts of materials in the record, showing that the materials cited do not establish

the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). If the movant establishes "the absence of evidence supporting an essential element of the non-movant's case," the burden shifts to the non-movant to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326 (citing *Condrey*, 429 F.3d at 562).

In ruling on a motion for summary judgment, a court should view the facts and evidence in the light most favorable to the non-moving party. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, the court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). The Court need only consider the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 701 (5th Cir. 2014).

When the parties file cross-motions for summary judgment, the Court considers each motion separately and views the evidence and reasonable inferences in favor of the nonmovant on each motion. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). When the movant bears the burden of proof at trial, the movant must establish all essential elements of its claim beyond peradventure. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Rule 56 also permits summary judgment on part of a claim or defense. FED. R. CIV. P. 56(a).

## DISCUSSION

The parties' motions present different questions. Fox seeks summary judgment on whether it owed Forney a duty to execute a partial release of its Abstract of Judgment. ECF No. 15 at 2, 18–19. Forney seeks summary judgment on his claims for slander of title, quiet title, and conversion. ECF No. 14.

The Court distinguishes between a statutory duty to execute a release and any obligation arising under Texas common law. Section 52.0012 does not expressly require a separate release. Under the circumstances presented, § 52.0012 did not require Fox to execute the

particular instrument tendered by Forney. That conclusion does not resolve whether Texas common law might require a creditor to disclaim a present lien or undertake some other action.

### I. Fox's Motion for Summary Judgment on Duty

Fox asks the Court to decide whether Texas law required it to execute the proposed partial release before the April 4, 2025 closing.

The parties dispute some of the facts surrounding that request. They disagree about the extent and content of the communications between counsel after March 14. Fox also disputes Forney's attempt to attribute Old Republic's decision to require an escrow to Fox rather than to Old Republic's own underwriting policy.

The Court considers Fox's motion by viewing the evidence and drawing reasonable inferences in Forney's favor. The Court assumes that Fox knew the property was the Forneys' homestead, knew of the April 4 closing, received the request and proposed partial release, knew that the Abstract was creating a practical problem for the closing, did not meaningfully respond to Forney's request, and did not execute the proposed release before closing. The Court assumes that the continued presence of the Abstract caused Old Republic to require the $231,526.40 escrow.

The question is whether § 52.0012 required Fox to execute the particular partial release instrument tendered by Forney, even accepting Forney's version of the disputed facts. That inquiry does not require the Court to decide whether Texas common law imposed a duty on Fox.

#### A. The Abstract could create a practical cloud even though it was not enforceable against the homestead.

Texas law protects homestead property from enforcement of a judgment lien while the property retains its homestead character. Tex. Prop. Code §§ 41.001, 52.001. Thus, although Fox's Abstract could create a cloud or potential future interest, it was not enforceable against Homestead #1 while the property remained the Forneys' homestead.

That does not mean the Abstract had no practical effect.

*Tarrant Bank v. Miller* recognized that an abstract of judgment may cloud title to a homestead even though the judgment lien cannot be enforced against the homestead. 833 S.W.2d 666, 667–68 (Tex. App.

1992). There, the title company would not issue title insurance without a partial release, and the sale failed. *Id.*

The Fifth Circuit later relied on *Tarrant Bank* in *Matter of Henderson*. 18 F.3d 1305, 1310–11 (5th Cir. 1994). *Henderson* held that an unenforceable judgment lien could impair a homestead exemption in a practical sense because the lien could interfere with title insurance and the owner's ability to deal with the property. *Id.*

Viewing the record in Forney's favor for purposes of Fox's motion, the Court assumes that the Abstract created the practical impediment Forney describes. Old Republic required protection against the Abstract before closing, and the sale ultimately closed with $231,526.40 of Forney's proceeds held in escrow.

### B. SECTION 52.0012 DID NOT REQUIRE FOX TO EXECUTE THE PROPOSED PARTIAL RELEASE.

Section 52.0012 gives a homestead owner a statutory procedure to address a judgment lien appearing in the property records. The debtor may record a homestead affidavit and certificate of mailing. TEX. PROP. CODE § 52.0012(b). The debtor must provide the required notice to the judgment creditor. TEX. PROP. CODE § 52.0012(b-1).

Subsection (c) provides that, subject to subsections (d) and (e), the affidavit serves as a release of record of the judgment lien. TEX. PROP. CODE § 52.0012(c). Subsection (d) provides separate protection to a purchaser or mortgagee: if no contradicting affidavit is filed, a bona fide purchaser or mortgagee may conclusively rely on the original affidavit during the period provided by the statute. TEX. PROP. CODE § 52.0012(d). The April 4 closing occurred before expiration of the creditor's 30-day period to file a contradicting affidavit. The conclusive-reliance protection provided to qualifying purchasers and mortgagees under subsection (d) was not yet available. TEX. PROP. CODE § 52.0012(d)–(e). That timing also explains why the statutory procedure had not fully resolved the title insurer's concerns before closing.

The statute distinguishes the legal effect of the homestead affidavit under subsection (c) from the conclusive-reliance protection available to qualifying purchasers and mortgagees under subsection (d). Although that protection had not become available by the April 4 closing, the affidavit was not necessarily without legal effect before that date. The distinction does not alter the Court's conclusion that § 52.0012 imposed no affirmative obligation on Fox to execute a separate partial release. TEX. PROP. CODE § 52.0012(c)–(e).

The statute does not state that a judgment creditor must execute a separate release. The Legislature imposed specific requirements on the debtor. It gave the creditor the option to file a contradicting affidavit. It did not require the creditor to sign a release prepared by the debtor or the title company. *See generally* TEX. PROP. CODE § 52.0012(b)–(e).

The timing of the statutory procedure does not change that conclusion. The Homestead Affidavit was recorded on March 19, 2025. The Certificate of Mailing was recorded on March 20, 2025. The sale closed on April 4, 2025. Section 52.0012 measures the creditor's 30-day period from the filing of the Certificate of Mailing. § 52.0012(e). Thus, the statutory period had not expired by the April 4 closing.

Forney is correct on an important factual point. The statute's conclusive-reliance protection was not yet available to the purchaser at the time of the closing. Fox still had time to file a contradicting affidavit.

Nothing in § 52.0012 expressly requires a judgment creditor to execute a separate partial release or shorten the statutory period to accommodate a scheduled closing. TEX. PROP. CODE § 52.0012(b)–(e). Accordingly, the statute does not itself impose the obligation asserted by Forney. That conclusion does not determine whether Texas common law may impose an obligation arising from a creditor's conduct under particular circumstances.

The timing may explain why § 52.0012 did not fully resolve Old Republic's concern before the April 4 closing. But that timing gap did not impose an additional statutory obligation on Fox to shorten the statutory period or execute the separate partial release prepared for the closing.

### C. THE COMMON LAW AUTHORITIES DO NOT ESTABLISH AN UNQUALIFIED DUTY TO EXECUTE THE REQUESTED RELEASE

Forney argues that Texas common law independently required Fox to execute a partial release. The authorities do not establish a general obligation requiring every judgment creditor to release an abstract upon request. But neither do they categorically foreclose liability arising from a creditor's conduct concerning an asserted lien.

In *Tarrant Bank*, the court recognized that an unenforceable judgment lien may cloud homestead title and prevent a sale. 833 S.W.2d at 667–68. Because liability had been established through discovery

sanctions, the court did not decide on the merits whether refusal to execute a release independently establishes liability. *Id.* at 668. *Henderson* likewise recognized the practical impairment caused by an unenforceable judgment lien without deciding whether Texas common law required a creditor to execute a release. *In re Henderson*, 18 F.3d at 1310–11.

The Fifth Circuit has similarly observed that a judgment creditor may incur slander-of-title liability for refusing to grant a partial release of a judgment lien against homestead property under contract to sell. *Smith v. H.D. Smith Wholesale Drug Co. (In re McCombs)*, 659 F.3d 503, 508 (5th Cir. 2011) (citing *Tarrant Bank*, 833 S.W.2d at 667–68). But *McCombs* concerned the enforceability of a judgment lien in bankruptcy and did not decide whether a creditor had an independent duty to execute a particular release.

Other decisions recognize that a creditor's conduct concerning an asserted property interest may give rise to liability. In *Ellis v. Waldrop*, the Texas Supreme Court recognized slander of title as a cause of action for damages arising from failure to release a purported but nonexistent property interest. 656 S.W.2d 902, 905 (Tex. 1983). In *First National Bank of McAllen v. Moore*, the court recognized that judgment creditors' refusal to disclaim a purported lien against the judgment debtor's wife's separate property warranted equitable relief quieting title, but it eliminated the trial court's award of damages. 7 S.W.2d 145, 146–47 (Tex. App. 1928). *Ramsey v. Davis* also recognized that refusal to release an abstract against homestead property resulting in a lost sale may constitute slander of title. 261 S.W.3d 811, 817 (Tex. App. 2008).

The existence of a possible duty to execute a release does not itself establish an independent right to recover damages. In *Modern Exploration, Inc. v. Maddison*, the court acknowledged that a party might owe a common law duty to release a terminated mineral interest but declined to recognize a damages remedy based on that duty alone without proof of the loss of a specific sale. 708 S.W.2d 872, 877 (Tex. App. 1986). Similarly, in *Southwest Guaranty Trust Co. v. Hardy Road 13.4 Joint Venture*, the court considered a negligence claim arising from an invalid lien and borrowed slander-of-title principles to determine causation and the proper measure of damages. 981 S.W.2d 951, 954–56 (Tex. App. 1998).

These authorities distinguish the existence of a possible release obligation from the elements of a recognized cause of action. Even if a judgment creditor's conduct gives rise to a common law obligation,

violation of that obligation does not, standing alone, entitle the property owner to damages. The plaintiff must establish a viable cause of action and the damages legally recoverable under that theory.

These authorities recognize that a creditor's conduct concerning an asserted property interest may give rise to liability, but they do not establish that every refusal to execute a partial release creates a separate damages remedy. Whether a duty exists, and its scope, are questions of law informed by the circumstances presented. *See Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503–04 (Tex. 2017).

### D. Attorney General Opinion DM-366 Supports a Narrow, Instrument-Specific Duty Determination

Texas Attorney General Opinion DM-366 considered whether a judgment creditor must release an abstract of judgment affecting homestead property. Tex. Att'y Gen. Op. No. DM-366, at 8–9 (1995). The Attorney General concluded that a creditor generally need not relinquish a valid potential future judgment lien merely because the recorded abstract presently impairs the marketability of homestead property. *Id.* at 9. But the opinion expressly declined to determine whether, under particular circumstances, a creditor might have a duty to disclaim a present lien under a theory other than slander of title. *Id.* at 9 n.6.

DM-366 also distinguished between an unconditional release and a release limited to a particular transaction. The opinion explained that a creditor could execute a partial release expressly conditioned on the contemplated sale while preserving any potential future lien. *Id.* at 9.

The distinction identified in DM-366 is significant here. Forney's proposed instrument purported to release all liens and encumbrances created by Fox's Abstract as to Homestead #1. ECF No. 19-2 at 65. It did not expressly condition that release on the contemplated sale or preserve Fox's potential future lien rights. Execution of that instrument presented a different question from merely disclaiming a presently unenforceable lien.

Section 52.0012 did not require Fox to execute the particular instrument requested. That statutory holding does not determine whether Fox had a separate common law duty to disclaim a present lien, execute an appropriately limited release, or refrain from affirmatively maintaining an invalid claim against homestead property.

### E. The Absence of a Statutory Duty Does Not Dispose of Forney's Claims

For purposes of Fox's motion, the Court assumes that Fox knew the property was the Forneys' homestead, knew of the scheduled closing, received the proposed release, understood that the Abstract impeded the transaction, and failed to meaningfully respond before closing. The Court also assumes that Fox's failure to execute the instrument caused Old Republic to require the escrow.

Those circumstances do not establish an affirmative obligation to execute the particular instrument tendered. That instrument purported to release all liens and encumbrances created by the Abstract as to the identified property, without expressly conditioning the release on the contemplated sale or preserving Fox's potential future lien rights. ECF No. 19-2 at 65. Texas Attorney General Opinion DM-366 recognizes the distinction between disclaiming a present lien and relinquishing a potentially enforceable future interest. Tex. Att'y Gen. Op. No. DM-366, at 9 (1995). Section 52.0012 did not require Fox to execute the particular instrument requested. The Court does not determine whether Fox's conduct gave rise to a separate obligation under Texas common law.

The absence of a statutory duty to execute the particular instrument does not, standing alone, dispose of Forney's pleaded claims. A possible obligation to undertake some other action likewise does not establish an independent damages remedy. *See Modern Exploration*, 708 S.W.2d at 877. Fox expressly confined its motion to the asserted duty to execute a release and reserved the remaining elements of Forney's causes of action. ECF No. 15 at 18–19. Because the legal determination reached here does not itself entitle Fox to judgment dismissing those claims, Fox's Motion for Summary Judgment is denied.

## II. Forney's Motion for Summary Judgment

Forney bears the burden of proof on his claims. He must establish each required element to obtain summary judgment. *Fontenot*, 780 F.2d at 1194. If a material fact supporting a required element is genuinely disputed, the Court must deny his motion. The Court also must deny the motion if the undisputed facts fail to establish a required element as a matter of law.

### A. FORNEY HAS NOT ESTABLISHED ENTITLEMENT TO SUMMARY JUDGMENT ON SLANDER OF TITLE

Texas law requires a plaintiff asserting slander of title to prove that: (1) the plaintiff possessed an interest in the property; (2) the defendant published false and disparaging words about the plaintiff's title; (3) the publication was made with legal malice; and (4) the publication caused special damages through the loss of a specific sale. *Duncan Land & Expl., Inc. v. Littlepage*, 984 S.W.2d 318, 332 (Tex. App. 1998); *see also Allen-Pieroni v. Pieroni*, 535 S.W.3d 887, 889 (Tex. 2017).

Forney has not established all of those elements without a genuine dispute of material fact.

#### 1. THE COURT NEED NOT DECIDED WHETHER THE ESCROW-RELATED LOSSES SATISFY THE SPECIAL DAMAGES REQUIREMENT

Texas law generally requires proof that the alleged slander frustrated a specific pending sale. *See A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145, 146 (Tex. 1982); *see also Allen-Pieroni*, 535 S.W.3d at 889. That requirement ordinarily presents little difficulty when the alleged disparagement causes a prospective purchaser to abandon the transaction. The circumstances here are different.

The April 4 sale closed, but only after Old Republic required $231,526.40 of Forney's proceeds to be withheld in escrow. Forney contends that the escrow was necessary to preserve the pending sale because Fox had not executed the requested partial release. Thus, Forney's theory is not simply that the Abstract impaired the marketability of Homestead #1. He contends that he avoided losing an identified pending sale by accepting an escrow arrangement that allegedly caused him financial injury.

Texas law generally permits an injured party to recover reasonable expenditures incurred in mitigating damages caused by an actionable wrong. *See Tex. & P. Ry. Co. v. Mercer*, 127 Tex. 220, 225, 90 S.W.2d 557, 560 (Comm'n App. 1936); *see also JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 486–87 & n.3 (Tex. 2019) (recognizing that mitigation principles govern the measurement of damages in contract, tort, and statutory claims). But the doctrine of mitigation ordinarily concerns the amount of damages recoverable after an actionable injury has been established. It does not necessarily eliminate an essential

element of the underlying cause of action. *See Allen-Pieroni*, 535 S.W.3d at 889 (requiring proof of special damages before addressing mitigation).

In *Clark v. Lewis*, the court rejected an exception to that requirement where property owners posted a bond to address a disputed lien but conceded that no specific sale was lost. 684 S.W.2d 161, 163–64 (Tex. App. 1984). Similarly, *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC* recognized that a completed sale does not necessarily preclude recovery if a separate, identifiable sale was frustrated, but dismissed a claim alleging only less favorable terms in the consummated transaction. 966 F. Supp. 2d 690, 700–02 (W.D. Tex. 2013). Neither decision expressly resolves whether losses incurred to preserve the same pending sale may satisfy the special-damages requirement as mitigation expenses. General mitigation principles likewise do not independently dispense with that requirement.

Even assuming that Texas law would permit consideration of reasonable losses incurred to preserve an otherwise frustrated sale, Forney must still establish the remaining elements of slander of title. As explained below, he has not established legal malice as a matter of law. His motion must be denied regardless of whether the claimed escrow-related losses could satisfy the special-damages requirement.

**2. MALICE ALSO PRESENTS A GENUINE FACTUAL DISPUTE.**

Independently of the unresolved question concerning mitigation and special damages, Forney has not established legal malice as a matter of law.

Legal malice in this context means deliberate conduct without reasonable cause. *Ramsey*, 261 S.W.3d at 816. Because Forney is the movant on this claim, the Court must draw reasonable inferences concerning Fox's state of mind in Fox's favor. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265–66 (5th Cir. 1991) (explaining that state-of-mind issues often depend on credibility and competing inferences inappropriate for resolution on summary judgment).

Some facts support Forney's position. Fox knew about the homestead claim. Fox knew the closing date. Fox received the proposed release. Fox did not execute it before closing.

Other facts support Fox's position. Fox did not file a contradicting affidavit. Fox did not try to foreclose on Homestead #1. Fox contends that it understood § 52.0012 to provide the proper procedure and did not

believe that it was claiming an enforceable present lien against the homestead.

Those facts permit competing inferences about Fox's state of mind and whether its conduct lacked reasonable cause. On Forney's motion, the Court must draw reasonable inferences in Fox's favor. It may not weigh those competing explanations or decide which is more believable.

Forney's own motion recognizes this problem by stating that malice may not be a proper subject for summary judgment.

The genuine dispute over malice independently prevents summary judgment for Forney on slander of title.

Because Forney has not established every required element, his motion for summary judgment on slander of title is denied.

The Court need not decide at this stage whether other disputed issues, including falsity, publication, causation, and the proper measure of damages, would independently defeat the claim at trial.

### B. Forney Has Not Established Entitlement to Present Quiet-Title Relief

A suit to quiet title requires the plaintiff to show: (1) an interest in specific property; (2) a claim by the defendant that affects title to that property; and (3) that the defendant's claim, although facially valid, is invalid or unenforceable. *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App. 2013).

Even assuming that the Abstract created the practical cloud Forney describes before the sale, that historical impairment does not establish his entitlement to present quiet-title relief. Old Republic treated the Abstract as an impediment to insuring title. *Tarrant Bank* and *Henderson* recognize that an unenforceable judgment lien may have that practical effect.

But the Rule 56 question is whether the undisputed facts establish Forney's right to judgment on his present quiet-title claim. They do not.

Homestead #1 was sold on April 4, 2025. Forney no longer owns that property. Fox later executed a release as to the property. Thus, Forney has not identified a present adverse claim against his title that remains for the Court to remove.

An action to quiet title provides equitable relief directed toward removing an existing cloud from specific property, not damages for a cloud that existed in the past. *See Ellis*, 656 S.W.2d at 905; *Montenegro*, 419 S.W.3d at 572; *see also Modern Exploration*, 708 S.W.2d at 877 (explaining that monetary damages are not available merely through an action to remove a cloud on title). Thus, even assuming the Abstract previously clouded Homestead #1, that historical impairment does not establish Forney's entitlement to present quiet-title relief or monetary damages under that theory.

Forney's Motion for Summary Judgment on his quiet-title claim is denied. Because Fox's limited motion did not present the separate elements of that claim for adjudication, the Court does not determine whether Fox would be entitled to judgment at trial.

### C. Forney Has Not Established Fox's Dominion or Control Over the Escrowed Funds

Forney also seeks summary judgment on conversion.

Conversion requires proof that the plaintiff owned, possessed, or had the right to possess personal property and that the defendant wrongfully exercised dominion or control over that property in a manner inconsistent with the plaintiff's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446–47 (Tex. 1971).

The alleged property here is the $231,526.40 held in escrow by Old Republic. Although conversion does not require a defendant to physically possess the property, it does require the wrongful exercise of dominion or control over that property. *Waisath*, 474 S.W.2d at 447. Conversion of money also generally requires specifically identifiable funds subject to an obligation to deliver or otherwise particularly treat those funds. *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012).

Forney has not established that Fox exercised dominion or control over the escrowed funds. Although Forney contends that Fox's refusal to execute the partial release caused Old Republic to withhold the money, causation of the escrow does not, without more, establish that Fox itself exercised control over the funds. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982) (distinguishing the taking of a security interest from the exercise of actual ownership or control).

Viewing the record and reasonable inferences in Fox's favor, Forney has not established the dominion-or-control element as a matter of law. The Court denies Forney's Motion for Summary Judgment on conversion without deciding whether the particular escrow arrangement otherwise satisfies the requirements applicable to conversion of money.

## CONCLUSION

Fox's Motion for Summary Judgment is denied. Although Texas Property Code § 52.0012 did not require Fox to execute the partial-release instrument tendered by Forney, that does not resolve whether Fox's conduct violated an independently recognized common law obligation.

Forney's Motion for Summary Judgment is denied as to slander of title, quiet title, and conversion. The Court does not determine whether Fox's conduct caused any loss of otherwise exempt sale proceeds or whether such a loss would be recoverable under a viable cause of action.

SIGNED 10/28/2026

Marvin Isgur
United States Bankruptcy Judge